UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID J. SCOTT,

      Plaintiff,

v.                                                                          Case No. 1:04-cv-125

                                                         HON. DAVID W. MCKEAGUE

T. TOWNSEL-MUNDAY,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

      Plaintiff prisoner David J. Scott filed a complaint under 42 U.S.C. § 1983 against defendant Resident Unit Manager Mary Townsel-Munday.  At all relevant times plaintiff was incarcerated at the Muskegon Correctional Facility.  Plaintiff's first amended complaint asserts retaliation claims against defendant.  Plaintiff complains that defendant gave him two misconduct tickets in retaliation for his threatened grievance filing against defendant.

      Defendant issued plaintiff a misconduct ticket for disobeying a direct order on February 21, 2001, when she ordered plaintiff to change out of his navy blue sweat pants.  Plaintiff alleges that he did change out of the sweat pants.  However, defendant asserts that when she observed plaintiff twice that day he was still wearing his sweat pants.  Prison rules forbid prisoners from wearing navy blue sweat pants.  On March 14, 2001, the misconduct hearing officer dismissed the misconduct ticket because plaintiff complained that he was never told that he could not wear the sweat pants at any time, but only when he entered the control center.  Plaintiff states that he was going to yard.  The hearing officer found that "disobeyance of the initial order is not shown, nor can

it be determined what was later told prisoner in unit, who was there, etc., how prisoner was dressed, because of non-response to prisoner's questions for reporter. . . ."

Defendant issued a misconduct ticket to plaintiff on March 23, 2001, for being out of place. Plaintiff was issued a pass to see the RUM. Instead, plaintiff went to the law library. The pass looked like a pass to go the law library and plaintiff has always gone to the law library at that time every day. The Hearing officer found plaintiff not guilty and dismissed the charge. The hearing officer concluded:

> There is no dispute that Prisoner signed for and received a mandatory call out pass to see Reporter -RUM Munday- at 1330 until 1440 hours on 3/23/01. There is no dispute that Prisoner did not report for this call out. As Officer Cabana signed Prisoner's pass and verbally told Prisoner he could go to the library instead without realizing the pass was to see the RUM and as Librarian Amo accepted this pass and allowed Prisoner to remain in the library because this staff member believed an error was made on the pass showing it was to see the RUM as Prisoner comes to the library at this time all the time. Prisoner had staff authorization to be absent from his mandatory call out with the Reporter and to be at the library. Prisoner is found not guilty of the charged offense.

Plaintiff asserts that defendant intentionally filed these misconduct charges knowing that they were false charges. Plaintiff asserts that defendant told him that she would continue to file misconduct charges as long as plaintiff continued to file grievances and lawsuits against MDOC staff.

Defendant first moves for dismissal by arguing that plaintiff failed to show that he exhausted his grievance remedies. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. See Porter v. Nussle, 534 U.S. 516, 122 S. Ct. 983 (2002); Booth v. Churner, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. See Porter,

122 S. Ct. at 988; Booth, 532 U.S. at 741; Knuckles El v. Toombs, 215 F.3d 640, 642 (6th Cir.), cert.

denied, 531 U.S. 1040 (2000); Freeman v. Francis, 196 F.3d 641, 643 (6th Cir. 1999).  A district

court must enforce the exhaustion requirement sua sponte.  Brown v. Toombs, 139 F.3d 1102, 1104

(6th Cir.), cert. denied, 525 U.S. 833 (1998); accord Wyatt v. Leonard, 193 F.3d 876, 879 (6th Cir.

1999).

   Plaintiff claims that he was on modified access to the grievance process.  Under

Michigan Department of Corrections policy, a prisoner is placed on modified access for filing "an

excessive number of grievances which are frivolous, vague, duplicative, non-meritorious, raise non-

grievable issues, or contain prohibited language . . . or [are] unfounded."  MICH. DEP'T OF CORR.,

Policy Directive 03.02.130, ¶ JJ.  (effective Nov. 1, 2000).  The modified access period is ninety

days and may be extended an additional thirty days for each time the prisoner continues to file a

prohibited type of grievance.  Id.  While on modified access, the prisoner only can obtain grievance

forms through the Step I coordinator, who determines whether the issue is grievable and otherwise

meets the criteria under the grievance policy.  Id., ¶ MM.  However, exhaustion is not demonstrated

by simply asking a counselor for a form.  The prisoner must allege that there is no other source for

obtaining a form or that he made other attempts to obtain a form or to file a grievance without a

form.  Jones v. Smith, 266 F. 3d 399 (6th Cir. 2001).

   Plaintiff has asserted that he wrote letters requesting grievance forms to assert his

retaliation claims against defendant.  Prisoner Grievance Coordinator Matt Brevard submitted an

affidavit explaining that plaintiff was familiar with how to obtain grievance forms while on modified

access to the grievance process and that plaintiff had filed grievances while on modified access.

When a grievance form request is received by a prisoner on modified access, the request is logged

and copies are maintained.  Plaintiff has presented letters that he allegedly sent to the grievance

coordinator requesting forms.  Plaintiff claims that he never received any response to his letters.
Grievance Coordinator Brevard attests that he does not recognize the documents as being received
by his office and that he has no record of a request for grievance forms by prisoner Scott during the
relevant time period.  Accordingly, because plaintiff has failed to show that he actually submitted
his requests for grievance forms and that the request was denied, it is recommended that the court
dismiss the complaint without prejudice for failure to exhaust grievance remedies.  It is further noted
that in a letter dated April 4, 2001, plaintiff states in the body of his letter that on April 12, 2001, he
was acquitted on the ticket.  Defendant argues that this is further evidence that plaintiff's letters were
prepared subsequently, solely for purposes of the litigation and that plaintiff never actually submitted
these letters to the grievance coordinator.  Regardless, it is plaintiff's burden to show that he
exhausted his grievance remedies.  Plaintiff has failed to make that showing.

        Defendant additionally filed a motion for summary judgment pursuant to Rule 56 of
the Federal Rules of Civil Procedure.  Summary judgment is appropriate only if the moving party
establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment
as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986).
If the movant carries the burden of showing there is an absence of evidence to support a claim or
defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers
to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.  Id.
at 324-25.  The nonmoving party cannot rest on its pleadings but must present "specific facts
showing that there is a genuine issue for trial."  Id. at 324 (quoting Fed. R. Civ. P. 56(e)).  While the
evidence must be viewed in the light most favorable to the nonmoving party, a mere scintilla of
evidence in support of the nonmovant's position will be insufficient.  Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 251-52 (1986).  Ultimately, the court must determine whether there is sufficient

- 4 -

"evidence on which the jury could reasonably find for the plaintiff." Id. at 252. See also Leahy v. Trans Jones, Inc., 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); cf. Moore, Owen, Thomas & Co. v. Coffey, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff alleges that the misconduct tickets were filed solely in retaliation for his threatened future grievance filings or past litigation and grievance filings. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 *1037 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, in least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Although both misconduct tickets were dismissed by the hearing officer, the facts show that defendant was justified in writing both tickets. It is undisputed that plaintiff was wearing blue sweat pants. Plaintiff argues that his sweat pants were not navy blue, but just blue. Defendant has stated that the pants were navy blue. The misconduct ticket was dismissed, not based upon the color of the sweat pants, but because the hearing officer felt that it was not shown that plaintiff failed to follow the order to change into different clothing. PD 04.07.112 which governs prisoner property prohibits an inmate from wearing navy blue sweat pants. Accordingly, because plaintiff was wearing sweat pants that were at least arguably navy blue, defendant was justified in issuing plaintiff a

misconduct ticket.  Moreover, it is undisputed that plaintiff was out of place when he went to the library instead of to see the RUM as required by the pass.  The hearing officer dismissed the ticket because he felt plaintiff was not intentionally out place and that he went to the library only after another prison employee told him to go the library.  However, the issuance of the misconduct ticket was otherwise justified because plaintiff was out of place.

Accordingly, defendant is entitled to qualified immunity.  Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful.  *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

"The procedure for evaluating claims of qualified immunity is tripartite:  First, we determine whether a constitutional violation occurred;  second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known;  finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights."  *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits.  *Dietrich*, 167 F.3d at 1012.  An

official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus, qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Defendant issued two misconduct tickets to plaintiff based upon plaintiff's conduct. It is clear that the misconduct tickets were justifiable under the circumstances. Plaintiff was, at least arguably wearing navy blue sweat pants. A prisoner is not allowed to wear navy blue sweat pants. Similarly, plaintiff was out of place at the time the second misconduct was issued. The fact that plaintiff was able to successfully challenge the misconducts tickets and have them dismissed is an insufficient basis, considering the factual circumstances, to show that the tickets were retaliatory.

Accordingly, it is recommended that defendant's motion to dismiss and/or summary judgment (docket #22) be granted. The complaint should be dismissed without prejudice for failure to show exhaustion of grievance remedies. Alternatively, the case should be dismissed with prejudice on the merits.

Further, if the court adopts this recommendation the court should decide that an appeal of this action would not be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). See McGore v. Wrigglesworth, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the court grants defendants' motion for summary judgment, the court can discern no good-faith basis for an appeal. It is recommended that should the plaintiff appeal this decision, the court assess the $255 appellate filing fee pursuant to § 1915(b)(1), see McGore, 114 F.3d at 610-11, unless plaintiff is barred from proceeding in forma pauperis, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he should be required to pay the $255 appellate filing fee in one lump sum.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten days of your receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR. 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal of those issues or claims addressed or resolved as a result of the Report and Recommendation. United States v. Walters, 638 F.2d 947 (6th Cir. 1981).  See also Thomas v. Arn, 474 U.S. 140 (1985).


                                    /s/ Timothy P. Greeley
                                    TIMOTHY P. GREELEY
                                    UNITED STATES MAGISTRATE JUDGE

Dated:  June 2, 2005

- 9 -